IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2007 JUL 13  A 10: 18

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

TECH USA, INC.                           *
8334 Veterans Highway
Millersville, MD  21108,                 *
a Maryland Corporation
                                         *  Civil No. _____
        Plaintiff
                                         *
        v.
                                         *        L07CV1857
DAVID CARDER                             *
508 Hunters Creek Court
Allen, TX 75013                          *
                                         *        L07CV1857
BRIAN PRATT                              *
105 Sleepy Hollow
Lewisville, TX 75077                     *

WILLIAM ERIC KRISHER                     *
4325 Windward Circle
Dallas, TX 75287                         *

ZEN MANAGEMENT CONSULTING, LLC           *
508 Hunters Creek Court
Allen, TX 75013                          *

ZEN MANAGEMENT CONSULTING, LLC           *
d/b/a Victory Services Group
3210 Belt Line Road, Suite 140           *
Dallas, TX 75234
                                         *
VICTORY SERVICES GROUP                   *
3210 Belt Line Road, Suite 140
Dallas, TX 75234                         *

                                         *
        Defendants
*       *       *       *       *       *       *       *

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES the Plaintiff TECH USA, INC. ("TECH USA") by and through its

attorneys Allan P. Hillman of Shipman and Goodwin, LLP and Grover C. Outland, III, General

Counsel, TECH USA, INC., and sues Defendants David Carder ("Carder"), Brian Pratt ("Pratt"), William Eric Krisher ("Krisher"), Zen Management Consulting, LLC ("ZMC"), Zen Management Consulting, LLC d/b/a Victory Services Group ("ZMC d/b/a VSG"), and Victory Services Group ("VSG").  TECH USA sues Defendants CARDER, PRATT, and KRISHER (collectively the "Individual Defendants") for four breaches of contract (post-term covenant not to compete, post-term covenant not to solicit TECH USA Customers [Existing and Prospective], confidentiality obligations, and misappropriation of TECH USA property); for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.; and for breach of duty of loyalty/other fiduciary duties. TECH USA sues all Defendants for trade secret misappropriation in violation of the "Maryland Uniform Trade Secrets Act," Md. Comm. Law Code Ann. §11-1201, et seq.; for federal unfair competition in violation of the "Lanham Act," 15 U.S.C. § 1125(a)(1)(A) and (B); for common law unfair competition; for aiding and abetting a breach of duty of loyalty/other fiduciary duties; for tortious interference; and for civil conspiracy.

## JURISDICTION AND VENUE

1.     TECH USA is a Maryland corporation with its principal place of business at 8334 Veterans Highway, Millersville, MD 21108.

2.     TECH USA is a small to mid-size competitor in the nationwide and worldwide market for providing customized staffing and consulting support to commercial and government clients.  It has expertise particularly in the areas of engineering, information technology, aerospace and government services, applications, infrastructure-telecom, accounting and finance, scientific and professional services.  Its competitors include companies ranging from those with revenues of many hundreds of millions of dollars or more to small start-ups.  TECH USA develops close working relationships with its existing and prospective corporate (and other)

2

customers in order better to understand and service their personnel and hiring needs, whether (a) via contract assignments of TECH USA personnel to the customer's (or its end-client's) projects, (b) by means of finding, screening and referring direct placements of new employees to join the customer's payroll, and/or (c) by participating directly in the customer's projects via subcontracting.

3.     Defendant Carder is an individual and, on information and belief, a citizen of Texas. His last known domicile is 508 Hunters Creek Court, Allen, Texas 75013.

4.     Defendant Pratt is an individual and, on information and belief, a citizen of Texas. His last known domicile is 105 Sleepy Hollow, Lewisville, Texas 75077.

5.     Defendant Krisher is an individual and, on information and belief, a citizen of Texas. His last known domicile is 4325 Windward Circle, Dallas, Texas 75287.

6.     Defendant Zen Management Consulting, L.L.C. ("ZMC") is a limited liability company organized on September 18, 2006 under the laws of the State of Texas, pursuant to the Certificate of Formation (Limited Liability Company), a true and correct copy of which is attached to the Verified Complaint as **Exhibit A**. Defendant ZMC's principal place of business is 3210 Belt Line Road, Suite 140, Dallas, Texas 75234, the same place of business as that of Defendant "Victory Services Group" (see below). Its telephone number is set forth in the 8-page Dunn & Bradstreet Report (a true and correct copy of which is attached hereto as **Exhibit B**) for ZMC as (214) 269-2999, the same telephone number as that of Defendant "Victory Services Group" (see paragraphs 7. and 8. below). The Individual Defendants Carder, Pratt, and Krisher are all listed as Managing Members on the Certificate of Formation for Defendant ZMC provided by the Texas Secretary of State. See Exhibit A, Article 3B. On information and belief, Defendant ZMC's principal line of business is "apparel and staffing," and the D&B report

indicates that ZMC's NAICS Code is 561499 (All Other Business Support Services) according to the "Company Overview" information near the top of page 2 of the Dunn & Bradstreet report. See Exhibit B.

7.    Defendant Zen Management Consulting, L.L.C. d/b/a Victory Services Group ("VSG") has, on information and belief, its principal place of business at 3210 Belt Line Road, Suite 140, Dallas, Texas 75234. Per the "D & B Address" information near the top of page 1 of Exhibit B, and the Victory Services Group website pages, true and correct copies of which are attached hereto as **Exhibit C**, Defendant ZMC d/b/a Victory Services Group has (214) 269-2999 as its main telephone number.  Its principal line of business is staffing employees in the following industries: Information Technology, Telecommunications, Accounting/Finance, Energy/Utilities, Engineering/Architecture, Defense/Aerospace/Aviation, and Automotive. See Exhibit C. (VSG website URL is www.victoryservicesgroup.com.)

8.    Defendant Victory Services Group has its principal place of business at 3210 Belt Line Road, Suite 140, Dallas, Texas 75234, the same place of business as that of Defendant Zen Management Consulting, L.L.C.   To the best of Plaintiff's knowledge, Defendant Victory Services Group is neither a corporation nor a limited liability company.  Its main telephone number is listed on VSG's website as (214) 269-2999, the same telephone number that Defendant Zen Management Consulting, L.L.C. listed in the Dunn and Bradstreet Report on itself. See Exhibits B and C. Per Defendant Victory Services Group's webpages, its principal line of business is staffing employees in the following industries: Information Technology, Telecommunications, Accounting/Finance, Energy/Utilities, Engineering/Architecture, Defense/Aerospace/Aviation, and Automotive.   By dialing the main telephone number for Defendant Victory Services Group and activating the dial-by-name directory, "Victory"

4

voicemail greetings for each of the Individual Defendants were reached by Plaintiff, true and correct copies of the transcripts of such three voicemail greetings from July 6, 2007 being attached as **Exhibit D** to this Verified Complaint. Defendants ZMC, ZMC d/b/a VSG, and VSG are collectively referred to hereinafter as the "Entity Defendants," and the Individual Defendants and the Entity Defendants are together collectively referred to hereinafter as the "Defendants." Plaintiff learned of Victory Services Group and its website in mid- to late-June 2007; Plaintiff learned of the other Entity Defendants' existence and of the Individual Defendants' involvement therein and of their "Victory" voicemail messages in the first week of July 2007.

9.     As set forth in detail below, the Individual Defendants entered into a Confidentiality/Non-Competition Agreement (Overhead Employees) ("Confidentiality/Non-Competition Agreement") with TECH USA, as employer.

10.     This Court has jurisdiction over all counts of this Complaint pursuant to 28 U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy, with respect to the equitable claims alone, exclusive of interest and costs, exceeds the sum of $75,000.   In addition, this Court also has jurisdiction over all counts of this Complaint pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1367, respectively, because there is federal question jurisdiction over counts six and eight, and supplementary jurisdiction over the state law counts. Personal jurisdiction and venue are proper in this judicial district because each of the Individual Defendants expressly agreed in paragraph 7 of the Confidentiality/Non-Competition Agreement with Plaintiff that he

> hereby consent[s], in any action brought in connection with any matters described in paragraph 5 of this Agreement [providing for injunctive relief where TECH USA has been caused immediate irreparable harm], to the jurisdiction of any federal or state court within the State of Maryland, and [he waives] all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision."

5

11.    Paragraph 8 of each of the Confidentiality/Non-Competition Agreements generally requires "Disputes" between the parties to be resolved by arbitration pursuant to the then-prevailing Employment Dispute Resolution Rules of the American Arbitration ("AAA"), with all demands to be filed with the Washington, D.C. or Atlanta, GA regional office of the AAA, and all arbitration proceedings to take place in the Baltimore, MD metropolitan area, with an exception for, among other things, legal actions for matters described in paragraph 5 of the Agreement (for example, claims for injunctive relief, as in the current case).

12.    Agreement ¶ 5 provides that in the event of any breach of the "above provisions" of the Agreement (i.e., paragraphs 1-4, including, without limitation, covenants relating to Confidential Information, Trade Secrets, Company Property, Non-solicitation, and Non-competition), such breach will cause TECH USA "immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event." And, further, in the event of any such breach, each of the Individual Defendants agreed in ¶ 5 that Plaintiff "shall have the right to proceed directly to any state or federal court in Maryland under the usual equity rules in order to obtain injunctive relief, including, without limitation, temporary restraining orders, preliminary injunctions and permanent injunctions against such breach (threatened or otherwise)."  Agreement ¶ 5 further provides, that the injunction shall run for a period of twelve months from the date the injunction is granted, rather than twelve months from the date of Termination of Employment.

## THE CONTROVERSY

13.    On or about December 12, 2005, Defendants Carder and Pratt each became employees (and Managing Directors of TECH USA's Dallas office).    As such, each had

significant sales and management responsibilities.  As recited above, they each entered into a

Confidentiality/Non-Competition Agreement.

14.    On or about April 3, 2006, Defendant Krisher became employed by Plaintiff as a

Recruiter at the Dallas office, and entered into a Confidentiality/Non-Competition Agreement

with TECH USA, as employer.

15.    As set forth below, the Confidentiality/Non-Competition Agreement protects TECH

USA's trade secrets, and also requires the Individual Defendants Carder, Pratt, and Krisher (as

well as other of Plaintiff's management, sales and recruiting employees) to refrain from, among

other things, competing with TECH USA for a limited period of time and/or soliciting TECH

USA's customers after leaving its employ.   A true and correct copy of the signed

Confidentiality/Non-Competition Agreement between TECH USA and each of the Individual

Defendants Carder, Pratt, and Krisher (respectively) is attached to this Complaint as **Exhibits E,**

**F, and G.**

16.    The Individual Defendants all terminated their employment with Plaintiff TECH USA

the same day, on or about September 1, 2006, abruptly and without prior notice to TECH USA.

While employed by TECH USA, the Individual Defendants reported little to no sales revenues,

gross margins, contractors assigned, and candidates placed over a number of months, although

Defendants Carder and Pratt did report substantial sales activity and sought reimbursement for

extensive expenses associated with sales activities during their tenure with TECH USA.

17. On information and belief, immediately after their abrupt and simultaneous resignations,

one or more of the Individual Defendants left Plaintiff's premises at 5050 Quorum Drive, Ste.

700 in Dallas, Texas carrying certain Company Property, Confidential Information, and Trade

Secrets of TECH USA, including, without limitation, TECH USA Customer list(s), Plaintiff's

7

Existing and Prospective Customers' hiring manager contact information, email addresses, direct dial telephone numbers, business cards, Customer pricing and margin tolerances, and other confidential and/or privileged information. The Individual Defendants' mass resignation severely damaged Plaintiff, thereby decimating the Dallas operations of TECH USA.

18. Within three weeks of their abrupt resignation from employment with Plaintiff, the Individual Defendants together formed Defendant Zen Management Consulting, L.L.C. and, on information and belief, immediately began using that entity as a vehicle for their business activities in blatant violation of the post-term covenant not to compete and other obligations set forth in the Confidentiality/Non-Competition Agreement into which each Individual Defendant had entered as a condition of his employment with Plaintiff TECH USA.

19. On or about May 16, 2007, a record of Plaintiff ZMC was created "at the request of David Carter" on Dunn and Bradstreet's website URL https://www2.dnbi.com/dnbi/companies/printECF listing Plaintiff ZMC as an enterprise in the "apparel and staffing" line of business. See Exhibit B. That record also confirms ZMC's principal place of business as 3210 Belt Line Road, Suite 140, Dallas, TX 75234 and a phone number of (214) 269-2999, the same business address and phone number set forth in Defendant Victory Service Group's website pages. See Exhibit C. Also, according to the same D&B record, in the "Finance" subsection of the "Banking and Finance" section near the bottom of page 7 of that record, the following information is reported: "David Carder submitted the following partial estimates dated May 16, 2007: Sales for 2006 were $999,999.00."

20. The D&B report establishes that the Individual Defendants' enterprise had partial[ly] estimate[d] revenue for 2006 of $999,999. During eight months of that year, the Individual Defendants Carder, Pratt, and Krisher were employees of Plaintiff, owing it duties of loyalty and

other fiduciary duties while so employed. During the final four months of 2006, the Individual Defendants were no longer employed by Plaintiff, but continued to owe TECH USA duties of loyalty and other fiduciary duties for a reasonable time after Termination of Employment and were also then subject to the post-term obligations in their Agreements with Plaintiff and to applicable law.

21.    On information and belief, the Individual Defendants Carder, Pratt and Krisher spent much of their time in Plaintiff TECH USA's employ plotting and colluding to divert and take business from Plaintiff while drawing salaries from, and submitting expense reports to, Plaintiff. Pursuant to the 2006 D&B report created according to information provided by Defendant Carder in mid-May 2007, the Individual Defendants' plotting (and acts in furtherance of such plots) yielded them, on information and belief, substantial revenue of $1 million or more.

22.    On information and belief, all of the Individual Defendants' activities during their TECH USA employment and on and after the September 18, 2006 formation of Defendant ZMC were in blatant disregard of the Confidentiality/Non-Competition Agreements they each signed separately with Plaintiff, and, as such, all revenues earned during those times in violation of such Confidentiality/Non-Competition Agreements are attributable to, and consequently due, to Plaintiff TECH USA.

23.    On information and belief, the phone number (214) 269-2999 belongs to all of the Entity Defendants (ZMC, ZMC d/b/a/ VSG, and/or VSG, collectively), companies/entities formed or operated by the Individual Defendants Carder, Pratt, and Krisher in order to circumvent their contractual (and other) obligations to Plaintiff. Each of those Individual Defendants has an extension and a voicemail greeting accessible from that telephone number. The physical location of the office for those Entity Defendants (where, on information and belief,

the phone number (214) 269-2999 is answered) is located only approximately 3 miles from TECH USA's former Dallas location at 5050 Quorum Drive and only 13.7 miles from TECH USA's current Dallas location at 2600 Network Blvd. in Frisco, Texas, in both cases clearly within the 50-mile non-competition radius set forth in paragraph 4(a) of the Confidentiality/Non-Competition Agreements entered into separately between Plaintiff and each of Defendants Carder, Pratt, and Krisher individually. See true and correct copies of two "Mapquest" searches indicating the above 3-mile and 13.7 mile distances, respectively, attached hereto collectively as **Exhibit H**.

24.     During mid-late June and early July 2007, Plaintiff TECH USA learned of Individual Defendants' violation of their Confidentiality/Non-Competition Agreements and this suit followed promptly.

25.     Under    paragraph    1    (Confidential    Information/Trade    Secrets)    of    the Confidentiality/Non-Competition Agreement between each Individual Defendant and Plaintiff, each Individual Defendant agreed that "during [his] employment by [TECH USA] and, after [his] termination, whether by [each Individual Defendant or TECH USA] with or without cause (collectively "Termination of Employment"), [each Individual Defendant] agree[s] that [he] shall not use for [his] own benefit, or the benefit of any third party, or disclose or divulge to any third party, any Confidential Information (as defined below) or Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act)." Under such paragraph 1, "Confidential Information" means inter alia, information

> not generally known by [TECH USA's] competitors or the general public concerning [TECH USA], including, but not limited to: (a) its/their financial affairs, sales, and marketing strategies, acquisition plans, pricing and costs; (b) any of the following information about corporations or other entities (collectively Customers) for whom [TECH USA] employs, recruits, supplies or

> otherwise finds or arranges employees: any such Customer's or
> Customer's names, addresses, telephone numbers, contact persons,
> staffing requirements, and/or margin tolerances regarding pricing; .
> . . .

26.    Under Confidentiality/Non-Competition Agreement ¶ 2 (<u>Company Property</u>), "upon

Termination of Employment, [each Individual Defendant] agree[s] to immediately return to

[TECH USA] any and all property, records and documents [each Individual Defendant] obtained

or developed in the course of such employment, including, without limitation, any lists or other

documents, whether written or electronic, containing in whole or in part any of the Confidential

Information or Trade Secrets."

27.    Paragraph 3(c) of the Confidentiality/Non-Competition Agreement that each

Individual Defendant signed provides (in pertinent part) that ". . . for twelve (12) months after

Termination of Employment, [each Individual Defendant] will not in any manner:"

> solicit, induce, attempt to solicit or induce or assist others to
> approach, induce or attempt to induce . . . (b) any Existing
> Customer or any Prospective Customer [defined, respectively, as
> "any individual, business, corporation, or other entity which, at any
> time within the two (2) year period prior to the date of Termination
> of Employment" was a Customer or Prospective Customer of
> TECH USA] to terminate, eliminate, or reduce its business
> relationship with [TECH USA], or do anything, directly or
> indirectly to interfere with the business relationship, existing or
> prospective, between [TECH USA] and (i) any of their/its
> Customers. . .

28.    Subparagraphs (a) and (b) of Confidentiality/Non-Competition Agreement ¶ 4 (<u>Non-

competition</u>) provide (in pertinent part) that

> . . . for twelve (12) months after Termination of Employment, [each
> Individual Defendant] agree[s] that [he] will not, either directly or indirectly,
> in any manner or capacity, as employee, principal, agent, partner, officer,
> director, employee, member of any association or limited liability company,
> consultant, advisor or in any capacity other than in [his] capacity as an
> employee of [TECH USA]:

      (a) . . . (after Termination of Employment) engage in or work for any individual, business, corporation, other entity or activity which engages (in whole or in part) in the business of recruiting or providing employees, on a temporary or permanent basis, and which has an office located within fifty (50) miles of any of [TECH USA's] offices (or one or more of them);

      (b) . . . (after Termination of Employment) approach, contact, solicit, divert, accept, or contract with any employees or personnel to provide services on a temporary or permanent basis to any individual, corporation, or other entity or activity which at any time within two (2) years prior to the date of Termination of Employment, has been, is, or was an Existing Customer or Prospective Customer, as defined above.

As stated hereinabove, if the employee violates this obligation, the one year non-competition restriction commences upon the date an injunction halting any violation is granted. (Id at ¶ 5). This provision is designed to address precisely the situation which exists here: TECH USA bargained for a full year of protection. Due to no fault of Plaintiff, it only recently confirmed that TECH USA was not receiving that for which it had bargained; unless the one year restriction runs from the date of the Court's injunction order, it will lose 80-90% of its bargained-for protection (and relief).

      29.    Plaintiff's Chairman and CEO Mr. Howell risked his life savings, first in the start-up and acquisition of automotive franchises and other businesses in Maryland, and later risked a substantial part of his life savings in the start-up of TECH USA. Mr. Howell knows from personal experience that obtaining a customer and then holding onto that customer in today's highly competitive marketplace is a very difficult, time-consuming and investment-intensive process, especially in the staffing industry in which Plaintiff TECH USA competes. The staffing company TECH USA, which Mr. Howell started in a single 1,000 square foot office in Millersville, Maryland in early 1998 has, in the past 9+ years, grown to 14 offices in 11 states. (The Millersville office of Plaintiff has now expanded to more than 4,200 square feet.)

30.     From each of its offices, TECH USA expends a substantial amount of money, time, and other resources on its salespeople, training them to research their territory and find and acquire customers and develop customer relationships.  Plaintiff also makes major investments in national sales training conferences which all, or almost all, of its recruiters and/or account executives/salespersons attend.  For even a well-trained salesperson, obtaining a new Customer can take, from initial "cold call" or introduction/referral, to arranging and participating in various meetings with Customer personnel and managers, to placing the first contract employee on assignment there with the Customer (or providing a new employee for direct placement with the Customer) anywhere from 6 months to 18 months.  The 12-month duration of the covenant not to compete that TECH USA has decided to have in its Confidentiality/Non-Competition Agreements with its account executives and recruiters reflects that lengthy sales cycle and also the fact that, after a salesperson or recruiter leaves TECH USA employment, there needs to be a "cooling off" or "lock-out" period in which the former salesperson or recruiter refrains from soliciting Plaintiff's customers and/or competing in the market area.  This allows for training of a new salesperson to replace the former employee and for the orderly transition of TECH USA accounts that the former salesperson serviced during his employment to the replacement salesperson.  Twelve months is the timeframe that many of Plaintiff's competitors have in their non-compete agreements with their employees, although a many of them choose an 18-month or lengthier period.

31.     In training its staffing salespeople and recruiters, TECH USA provides them with Confidential Information and Trade Secrets that TECH USA has developed over its nine-year history, affording the salesperson access to specific data on existing customers and prospective customers, including but not limited to non-public contact information for those customers'

hiring managers, as well as methods, techniques, and tools to price Plaintiff's services and expand its business/servicing footprint within the customer's organization in order to grow TECH USA's offerings/services from finding personnel for one department within a customer (e.g. IT) to several departments with the customer's organization (e.g. Engineering, Infrastructure-Telecomm, etc.)    Confidential Information and Trade Secrets that TECH USA salespeople, including the Individual Defendants, receive in order to perform their jobs include corporate and other customer names, street addresses, telephone numbers, hiring manager contact information (including hiring manager direct dial phone number and email address), pricing margins used in past transactions, customer preferences on preferred staffing solutions -- whether they utilize contract assignments, direct/permanent placements, "temp to perm" (otherwise known as "right to hire") arrangements, or other staffing solutions -- in securing new personnel.

32.    All of the Confidential Information and Trade Secrets described in the preceding paragraph constitutes information that TECH USA has developed over many years with substantial effort and experience; Plaintiff has safeguarded that Confidential Information and those Trade Secrets - - it was not public information, nor was it readily available to Plaintiff's competitors.  In fact, the Confidential Information and Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain. While an element or two of the above Confidential Information and Trade Secrets (such as the customer's corporate names and a switchboard phone number) may be ascertainable outside of TECH USA's business, it is all of the elements (especially hiring manager contact information, including hiring managers' and other contact persons' email addresses and direct dial phone numbers), pricing margins, and customer preferences on preferred staffing solutions that

14

constitutes and provides the value, and the whole of that information is not known outside of Plaintiff's business.

33.    Only those employees of Plaintiff involved in sales and recruiting know the above Confidential Information and Trade Secrets, and TECH USA safeguards it by taking such measures as (i) requiring that sales and recruiting employees of Plaintiff who need access to Confidential Information and Trade Secrets in order to service TECH USA customers and accounts sign Plaintiff's form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects those Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the above Confidential Information and Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names or other customer information on the TECH USA website; rather, the TECH USA Confidential Information and Trade Secrets are provided to those sales and recruiting employees (who comprise a small percentage of Plaintiff's total employee roster) having a "need to know," and access to the company database started in the Spring of 2006 is via unique user name and password only, which are inactivated when an employee leaves the company.   The above Confidential Information and Trade Secrets are extremely valuable to TECH USA and its competitors because, armed with that Information and those Secrets, a competing staffing firm or former employee of Plaintiff could initiate a business relationship with an Existing Customer or Prospective Customer of TECH USA and steal business from Plaintiff.

34.    As described above, Plaintiff expends months of effort and much money, e.g. salary of TECH USA sales and recruiting employees (such as the Individual Defendants), sales employees' expenses, lunches and other meetings with customer representatives, in developing

the Confidential Information and Trade Secrets; and properly acquiring or duplicating the above Confidential Information and Trade Secrets, as a whole, would be difficult to accomplish because such Information and/or Secrets are not located in one publicly accessible database. Instead, it is developed over many months after numerous cold calls, meetings, lunches, and includes, as well, Plaintiff's experience in actual transactions with the customer in order to determine pricing margins and customer preferences on staffing solutions provided.

35.    TECH USA's Managing Directors (who are also in sales) and outside salespersons (known as "Account Executives" or "Business Development Managers"), as well as Plaintiff's inside salespersons (beginning with entry-level "Recruiters" having promotion opportunity to "Senior Recruiters"), all sign a "Confidentiality/Non-Competition Agreement" with Plaintiff in order to protect Plaintiff's interests to the minimum extent necessary in its business relationships with TECH USA customers and contract employees (or candidates) that Plaintiff refers to its customers, and also to protect Plaintiff's Confidential Information, Trade Secrets, and Company Property that are made available to TECH USA employees in order for them successfully to secure and service customers.  Despite the extended sales cycle needed to secure certain large corporate customers (up to 18 months), Plaintiff's Chairman and CEO Mr. Howell has nevertheless required employees of TECH USA (such as managing directors, account executives and recruiters) to sign a non-competition agreement with a duration of only 12 months.  As explained above, twelve months of "cooling off" by locking out a former employee from a particular market or group of customers s/he serviced while a TECH USA employee affords Plaintiff a reasonable opportunity to train the new salesperson to replace the former employee and to transition the account to the new salesperson without interference from the former employee.

36.   The geographic scope of TECH USA's non-compete (50 miles) reflects the typical size of a large metropolitan area in the United States.  Although TECH USA operates in many larger markets such as Northern Virginia/Washington, D.C., Atlanta, Orlando, Tampa, Dallas, Phoenix/Tempe, Baltimore/Central Pennsylvania (I-83 and I-97 corridors), and Philadelphia/Southern New Jersey where a distance of 75 or even 100 miles might be appropriate, Plaintiff's Mr. Howell has directed that the geographic line be drawn at 50 miles in order to protect only a reasonable area by means of the TECH USA non-competition agreement. The 50-mile radius is drawn from any of Plaintiff's offices because many TECH USA customers are serviced from a number of different offices, particularly the larger corporate accounts, and, at national conferences, salesmen and recruiters, such as the Individual Defendants, have the opportunity to meet, and do meet and converse in detail with, various TECH USA employees from other offices.  If there were no such restriction from each TECH USA office, then former employees (such as the Individual Defendants) would be free to locate a new competing business near another TECH USA office (Defendants' new Belt Line Road office is located approximately 3 miles from the TECH USA office where the Individual Defendants were employed by Plaintiff, see Exhibit H) and attempt to compete directly with that office by soliciting many of Plaintiff's larger Existing Customers and Prospective Customers (including ones the former employees had worked with at their TECH USA office), as well as attempt to recruit Plaintiff's employees that the Individual Defendants had met at TECH USA national conferences to work with or for Individual Defendants (or for one or more of their entities) in the vicinity of that other office.  The fifty (50) mile radius strikes a reasonable balance between Plaintiff's business interests and its former employees' ability to earn a livelihood; naturally, the

former employee is free to be employed within the 50-mile restricted area as long as s/he does not violate the provisions of Confidentiality/Non-Competition Agreement with TECH USA.

## COUNT I

### Breach of Contract (Post-Term Covenant Not to Compete) – The Individual Defendants'

37.   Plaintiff TECH USA hereby incorporates paragraphs 1-36 as if each were fully set forth herein.

38.   By means of the Individual Defendants' establishing a competing staffing enterprise (with almost identical lines of business specialties) or at a minimum, an entity "which engages (in whole or in part) in the business of recruiting or providing employees . . . within fifty (50) miles" of any of Plaintiff's offices, [see Agreement, ¶ 4(a)], Messrs. Carder, Pratt, and Krisher have violated the post-term non-competition covenant in the Confidentiality/Non-Competition Agreement ¶ 4(a).  It is indisputable that they have engaged in "(in whole or in part") in "the business of recruiting or providing employees, on a temporary or permanent basis" within 50 miles of the Dallas office of Plaintiff where they used to work and within 12 months of their Termination of Employment.  The Individual Defendants' (and their entities') office at 1320 Belt Line Road, Dallas, Texas is, on information and belief, the site(s) where the Individual Defendants worked in the staffing industry in violation of Confidentiality/Non-Competition Agreement ¶ 4(a).

39.   The Individual Defendants Carder's, Pratt's, and Krisher's acts in violating the post-term covenant not to compete in the Confidentiality/Non-Competition Agreements that each signed with TECH USA have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA.  The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against the Individual Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to FRCP 65, and paragraphs 4(a) and 5 of each of the three Confidentiality/Non-Competition Agreements in this case, enjoining the Individual Defendants, their agents, servants, and employees, and all those acting in concert with them, from violating the non-competition provisions of each of such Agreements.

(b)     Entry of an Order requiring an accounting by the Individual Defendants, jointly and severally, to TECH USA of all of the Individual Defendants' sales and revenues from their contractual violations, as to which sales and revenues TECH USA may be entitled as a result of such Defendants' aforesaid acts.

(c)     Entry of a judgment against the Individual Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreements between Plaintiff and each of the Individual Defendants).

## COUNT II

### Breach of Contract (Post-Term Covenant Not to Solicit Customers) - The Individual Defendants

40.     Plaintiff TECH USA hereby incorporates paragraphs 1-39 as if each were fully set forth herein.

41.     As documented by the formation documents of Defendant ZMC and the information provided by Defendant Carder to the D&B website (see Exhibits A and B to this Verified Complaint), the Individual Defendants (or one or more of them) have, on information and belief,

established a competing business in utter disregard of their obligations in their Confidentiality/Non-Competition Agreements with Plaintiff.

42.   On information and belief, the Individual Defendants could not have generated even the "partial revenue" claimed in the D&B report without one or more of them engaging in solicitation of Plaintiff's Existing Customers and/or Prospective Customers in violation of the Confidentiality/Non-Competition Agreement that the Individual Defendants each entered into with Plaintiff.

43.   Any and all solicitation by one or more of the Individual Defendants of Existing Customers and/or Prospective Customers of TECH USA is an activity in violation of the post-term covenant not to solicit in paragraphs 3(a), 3(c) and 4(b) contained in each soliciting Individual Defendant's Confidentiality/Non-Competition Agreement with Plaintiff.

WHEREFORE, Plaintiff prays judgment as follows:

(a)   Entry of a Preliminary and Permanent Injunction pursuant to FRCP 65, and paragraphs 3(a), 3(c), 4(b), and 5 of the Confidentiality/Non-Competition Agreement, enjoining the Individual Defendants Carder, Pratt, and Krisher, their agents, servants, and employees, and all those acting in concert with them, from violating the Customer (Existing and Prospective) non-solicitation restrictions of each Agreement.

(b)   Entry of an order requiring an accounting by all of the Individual Defendants to TECH USA of all Defendants' sales and revenues from their Customer (Existing and Prospective) non-solicitation violations, as to which sales and revenue TECH USA may be entitled as a result of the Individual Defendants' aforesaid acts.

(c)   Entry of a judgment against all of the Individual Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable

attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreements between Plaintiff and each of the Individual Defendants Carder, Pratt, and Krisher.

## COUNT III

### Breach of Contract (Confidential Information) - The Individual Defendants

44.     Plaintiff TECH USA hereby incorporates paragraphs 1-43 as if each were fully set forth herein.

45.     As documented by the formation documents of Defendant ZMC and the information provided by Defendant Carder to the D&B website (see Exhibits A and B to this Verified Complaint), the Individual Defendants (or one or more of them) have, on information and belief, established a competing business in utter disregard of their obligations in their Confidentiality/Non-Competition Agreements with Plaintiff.

46.     On information and belief, the Individual Defendants could not have generated even the "partial revenue" claimed in the D&B report without one or more of them using Plaintiff's Confidential Information for their own benefit (of for the benefit of a third party, including, without limitation, one of more of the Entity Defendants) in violation of the Confidentiality/Non-Competition Agreement the Individual Defendants each entered into with Plaintiff.

47.     Any and all use of TECH USA's Confidential Information by one or more of the Individual Defendants for their own benefit (or for the benefit of a third party, including, without limitation, one of more of the Entity Defendants) and/or merely the disclosure or divulging of Plaintiff's Confidential Information to any such third party is an activity in violation of paragraph 1 of the Confidentiality/Non-Competition Agreement(s) of the Individual Defendant(s) engaged in any such activity.

48.    Acts in violation of the Confidential Information provisions of any one or more of the Individual Defendants' Confidentiality/Non-Competition Agreement(s) have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA.  The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment as follows:

(a)    Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement, enjoining the Individual Defendants Carder, Pratt, and Krisher, their agents, servants, and employees, and all those acting in concert with them, from violating the Confidential Information provisions of such Agreement.

(b)    Entry of an Order requiring an accounting by the Individual Defendants to TECH USA of Defendant's sales and revenues resulting from their unauthorized use of TECH USA's Confidential Information, as to which sales and revenues TECH USA may be entitled as a result of their aforesaid acts.

(c)    Entry of a judgment against the Individual Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9, the attorney fee provision of the Confidentiality/Non-Competition Agreement between Plaintiff and each of the Individual Defendants Carder, Pratt, and Krisher).

**COUNT IV**

**Breach of Contract (Misappropriation of Company Property) – The Individual Defendants**

49.    Plaintiff TECH USA hereby incorporates paragraphs 1-48 as if each were fully set forth herein.

22

50.     On information and belief, one or more of the Individual Defendants had removed from Plaintiff's premises in Dallas, at some point before or shortly after their abrupt and simultaneous resignations on September 1, 2006, certain Company Property of TECH USA, including, without limitation, TECH USA customer list(s), Plaintiff's Existing Customers' and/or Prospective Customers' hiring manager contact information, email addresses, direct dial telephone numbers, business cards, customer pricing and margin tolerances, and other confidential and/or privileged information.  Any continued retention by Individual Defendants of Company Property of TECH USA is a violation of their Confidentiality/Non-Competition Agreement, paragraph 2.

51.     On information and belief, violations of the Company Property provisions in paragraph 2 (of any one or more) of the Individual Defendants' Confidentiality/Non-Competition Agreement(s) have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA.  The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against the Individual Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 2 and 5 of the Confidentiality/Non-Competition Agreement, enjoining the Individual Defendants Carder, Pratt, and Krisher, their agents, servants, and employees, and all those acting in concert with them, from violating the provisions of paragraph 2 of the Confidentiality/Non-Competition Agreement, and ordering the return of all Company Property in or under their possession or control to TECH USA within five (5) days of this Court's Injunction order.

(b)      Entry of an Order requiring an accounting by the Individual Defendants to TECH USA of Defendant's sales and revenues as a result of or in connection with Defendant's aforesaid acts in violation of paragraph 2 of the Confidentiality/Non-Competition Agreement.

(c)      Entry of a judgment against the Individual Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and each of the Individual Defendants Carder, Pratt and Krisher).

## COUNT V

### Statutory Trade Secret Misappropriation – All Defendants

52.    Plaintiff TECH USA hereby incorporates paragraphs 1-51 as if each were fully set forth herein.

53.    As recited in paragraph 1 of the Confidentiality/Non-Competition Agreement, in addition to Confidential Information, the Individual Defendants received from Plaintiff in the course of their employment Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act) (the "Act"), Md. Comm. Law Code Ann. §11-1201(e).

54.    Among the Trade Secrets entrusted to the Individual Defendants during their employment with Plaintiff was its customer list(s), including, without limitation, the identity of various TECH USA Existing Customers and Prospective Customers, as well as points of contact such as hiring managers at such Existing Customers and/or Prospective Customers (including without limitation such managers' email addresses and direct dial telephone numbers) and such Existing Customers' and/or Prospective Customers' pricing/margins for direct placements. The Trade Secrets described throughout this Count constitute information that TECH USA has

developed over many years (with substantial effort and expenditures of resources) and that Plaintiff has safeguarded as Trade Secrets - - it was not public information, nor was it readily available to its competitors.  In fact, the Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain.

55.     Only those of Plaintiff's employees involved in management, sales and recruiting have access to the above Trade Secrets, and TECH USA safeguards those Secrets by taking such measures as (i) requiring that those employees of Plaintiff who access Trade Secrets in order to service its customers and accounts sign the TECH USA-form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects Plaintiff's Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names or other customer information on the TECH USA website.  Instead, Plaintiff's Trade Secrets are provided to those sales and recruiting employees (who comprise a small percentage of TECH USA's total employee roster) having a "need to know," and access to the company database started in the Spring of 2006 is via unique user name and password only, which are inactivated when an employee leaves the company.

56.     Each of the Individual Defendants expressly agreed in the first sentence of paragraph 5 of the Confidentiality/Non-Competition Agreement that he signed with TECH USA that any breach by Defendant of paragraphs 1-4 of that Agreement "will cause [TECH USA] immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event."

57.     On information and belief, one or more of the Individual Defendants has misappropriated TECH USA's Trade Secrets after Termination of Employment, for his own

(and/or their) benefit, and/or for the benefit of a third party, including, without limitation, one of more of the Entity Defendants.   On information and belief, such acts of Defendant(s) in misappropriating TECH USA's Trade Secrets have been willful and malicious, and the Individual Defendants (or one or more of them) have sought actively to conceal them, as evidenced by the elaborate web that they weaved in the formation of the Entity Defendants.  For example, the hub of that web (Defendant ZMC), which has state-registered entity formation documents identifying the Individual Defendants by name, has *no* Internet or, to Plaintiff's knowledge, other commercial presence.   Defendant VSG, one of the Individual Defendants' web's tendrils, has an Internet presence, but no registration documents or other overt connections to any of the Individual Defendants.  See Exhibit C.  The above-described web woven by the Individual Defendants and their inclusion of apparel (per the D&B Report attached as Exhibit B) as part of Defendant ZMC's product/service offerings is, on information and belief, a malicious attempt to conceal the true substance and purpose of the Individual Defendants and Entity Defendants.

58.   Plaintiff has suffered damage and, unless such misappropriation is enjoined, will continue to suffer damage as a result of one or more of the Individual Defendants' and/or Entity Defendants' unlawful misappropriation of Plaintiff's Trade Secrets.   The harm cannot be fully recompensed in monetary damages, and is irreparable.

WHEREFORE, Plaintiff prays judgment as follows:

(a)   Entry of a Preliminary and Permanent Injunction against all of the Defendants and their agents, servants and/or employees, and all those acting in concert with any of them, enjoining them pursuant to § 1202 of the Act and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement from using or disclosing TECH USA's Trade

Secrets for their own benefit and from otherwise violating the Act and/or paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement.

(b)      Entry of a judgment jointly and severally against all of the Defendants pursuant to § 1203 of the Act for exemplary damages in an amount not exceeding twice any damages award made under § 1203(a), because Defendant(s) have (as stated above) engaged in a willful and malicious misappropriation.

(c)      Entry of a judgment jointly and severally against the Individual Defendants for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with the proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and each of the Individual Defendants).

(d)      Entry of a judgment jointly and severally against all of the Defendants pursuant to § 1204 of the Act for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding), since Defendant(s) have (as stated above) engaged in a willful and malicious misappropriation.

**COUNT VI**

**<u>Federal Unfair Competition – All Defendants</u>**

59.      Plaintiff TECH USA hereby incorporates paragraphs 1-58 as if each were fully set forth herein.

60.      As demonstrated by the Individual Defendants' (and through them the Defendant ZMC's) engaging in and/or operating a staffing business under the fictitious name "Victory Services Group" (<u>see</u> Exhibits A, B and C), all Defendants have, on information and belief, violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by promoting, advertising and holding

27

themselves out to the public in a false and deceptive manner likely to cause confusion, or to cause mistake. On information and belief, Defendant(s) have further misrepresented the origin of the services they are providing by holding themselves out through Defendant VSG's website as "Victory Services Group" (and, on information and belief, making no public filing in that name) when they actually own and operate Zen Management Consulting, L.L.C., in violation of 15 U.S.C. § 1125(a)(1)(A).

WHEREFORE, Plaintiff prays judgment against all of the Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and 15 U.S.C. § 1116, and paragraph 5 of the Confidentiality/Non-Competition Agreement, enjoining all of the Defendants, their agents, servants and employees, and all those acting in concert with him, from violating the Lanham Act.

(b)     Entry of an Order requiring an accounting by all of the Defendants to TECH USA of such Defendants' sales and revenues as a result of or in connection with Defendants' aforesaid acts in violation of the Lanham Act, pursuant to 15 U.S.C. § 1125.

(c)     Entry of a judgment against the Individual Defendants (jointly and severally) for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreements between Plaintiff and each Individual Defendant).

(d)     Entry of a judgment against all of the Defendants (jointly and severally) awarding exemplary damages and attorneys fees in this exceptional matter pursuant to 15 U.S.C. § 1117.

## COUNT VII

### Common Law Unfair Competition – All Defendants

61.     Plaintiff TECH USA hereby incorporates paragraphs 1-60 as if each were fully set forth herein.

62.     On information and belief, all of the Defendants have committed the tort of unfair competition against Plaintiff.   On information and belief, they have acted unfairly and deceptively, and have acted deliberately, maliciously, and with reckless disregard for Plaintiff's rights and the rights of members of the public.

63.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' unfair competition.   The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all of the Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction against all of the Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from engaging in unfair competition with TECH USA.

(b)     Entry of an Order requiring an accounting by each of the Defendants to TECH USA of his (or its, as applicable) sales and revenues, as a result of his (or its, as applicable) aforesaid acts in violation of the common law of unfair competition, and awarding Plaintiff punitive damages from all of the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000).

(c)     Entry of a judgment against all of the Individual Defendants jointly and severally for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and each Individual Defendant).

## COUNT VIII

**Computer Fraud and Abuse Act Violations – The Individual Defendants**

64.     Plaintiff TECH USA hereby incorporates paragraphs 1-63 as if each were fully set forth herein.

65.     On information and belief, one or more of the Individual Defendants were acting as agent for his (or their) new employer or new enterprise at the time he (or they) accessed a TECH USA computer, without authorization, and such unauthorized access caused at least $5,000 in losses.  Such actions and unauthorized access constitute violation(s) of the Computer Fraud and Abuse Act, 18 U.S.C. § § 1030, *et seq.* ("CFAA").

66.     Such violations of the CFAA by any one or more of the Individual Defendants have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA. The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against the Individual Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, the CFAA, and paragraph 5 of the Confidentiality/Non-Competition Agreement, enjoining the Individual Defendants Carder, Pratt, and Krisher, their agents, servants, and employees, and all those acting in concert with them, from violating the provisions of the CFAA.

(b)     Entry of a judgment jointly and severally against the Individual Defendants for Plaintiff's damages pursuant to the CFAA.

(c)     Entry of a judgment against the Individual Defendants jointly and severally for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with the proceeding pursuant to paragraph 9 of the

Confidentiality/Non-Competition Agreement between Plaintiff and each of the Individual Defendants).

## COUNT IX

### Breach of Duty of Loyalty/Other Fiduciary Duties - The Individual Defendants

67.     Plaintiff TECH USA hereby incorporates paragraphs 1-66 as if each were fully set forth herein.

68.     As a highly compensated Managing Director of Plaintiff's Dallas office, Individual Defendant Carder owed a duty of loyalty and other fiduciary duties to Plaintiff.

69.     As a highly compensated Managing Director of Plaintiff's Dallas office, Individual Defendant Pratt owed a duty of loyalty and other fiduciary duties to Plaintiff.

70.     As a recruiter in Plaintiff's Dallas office, Individual Defendant Krisher owed a duty of loyalty and other fiduciary duties to Plaintiff.

71.     On information and belief, each of the Individual Defendants breached his duty of loyalty and other fiduciary duties to Plaintiff by:

(i)     acting contrary to the best interests of his employer and principal, TECH USA, both during employment and after Termination of Employment;

(ii)    by soliciting, recruiting, and encouraging each other to terminate their relationship with Plaintiff and breach their duty of loyalty, other fiduciary duties, and other obligations to TECH USA;

(iii) by soliciting, recruiting, and encouraging each other to compete with Plaintiff;

(iv) by failing to act solely in the best interests of TECH USA;

31

(v)  by concealing and failing to disclose the disloyal acts of themselves and each other to Plaintiff; and

(vi)  by misusing and misappropriating information belonging to TECH USA which Plaintiff intended to be confidential and the disclosure of which is likely to cause irreparable harm to TECH USA.

72.    Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of one or more of Individual Defendants' breach of duty of loyalty/other fiduciary duties. The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against the Individual Defendants as follows:

(a)    Entry of a Preliminary and Permanent Injunction against the Individual Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from further breach of the duty of loyalty/other fiduciary duties.

(b)    Entry of an Order requiring an accounting by each of the Individual Defendants to TECH USA of his sales and revenues, as a result of his aforesaid acts in malicious breach of the duty of loyalty/other fiduciary duties, and awarding Plaintiff punitive damages from the Individual Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000).

(c)    Entry of a judgment against the Individual Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and each Individual Defendant).

## COUNT X

32

**Aiding and Abetting in Breach of Duty of Loyalty/Other Fiduciary Duties - All Defendants**

73.     Plaintiff TECH USA hereby incorporates paragraphs 1-72 as if each were fully set forth herein.

74.     On information and belief, each Defendant in this case wrongfully and knowingly aided and abetted in the breach of duty of loyalty/other fiduciary duties by one or more of the Individual Defendants.

75.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of one or more of Defendants' participation in the Individual Defendants' breach of duty of loyalty/other fiduciary duties.  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all of the Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction against all of the Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from aiding and abetting the Individual Defendants' breach of the duty of loyalty/other fiduciary duties.

(b)     Entry of an Order requiring an accounting by against all of the Defendants to TECH USA of their sales and revenues, as a result of their aforesaid acts in maliciously aiding and abetting the Individual Defendants' breach of the duty of loyalty/other fiduciary duties, and awarding Plaintiff punitive damages from all of the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000).

(c)     Entry of a judgment against the Individual Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable

attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and each Individual Defendant).

## COUNT XI

### Tortious Interference - All Defendants

76.    Plaintiff TECH USA hereby incorporates paragraphs 1-75 as if each were fully set forth herein.

77.    Plaintiff established contractual and other advantageous business relationships with its key management, sales, and recruiting employees including, without limitation, the Individual Defendants.

78.    Each of the Individual Defendants and each of the Entity Defendants knew of TECH USA's contractual and other advantageous business relationships with its key management, sales, and recruiting employees including, without limitation, the Individual Defendants.

79.    Despite knowledge of Plaintiff's advantageous business relations and contractual relationships with its key management, sales, and recruiting employees, all Defendants (jointly and severally) tortiously and, on information and belief, maliciously, intentionally and unjustifiably, interfered in TECH USA's business relations and contractual relations with its key employees by effectively soliciting and encouraging the Defendants' to breach their contractual and legal obligations to Defendants to resign their employment simultaneously, and to act for the benefit of the Individual Defendants' new enterprise(s), in competition with the Plaintiff.

80.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' tortious interference (as described above).   The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all of the Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction against all of the Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from further tortious interference.

(b)     Entry of an Order requiring an accounting by against all of the Defendants to TECH USA of their sales and revenues, as a result of their aforesaid acts in malicious tortious interference, and awarding Plaintiff punitive damages from all of the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000).

(c)     Entry of a judgment against the Individual Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and each Individual Defendant).


## COUNT XII

### Civil Conspiracy - All Defendants

81.     Plaintiff TECH USA hereby incorporates paragraphs 1-80 as if each were fully set forth herein.

82.     On information and belief, all Defendants agreed:

(i)   to divert to themselves staffing business, customers, and other corporate opportunities that were properly and legally Plaintiff's;

(ii)   to breach (and to participate in breaching) the Individual Defendants' duties of loyalty/other fiduciary duties owed to TECH USA;

(iii)   to interfere tortiously with TECH USA's contractual and other advantageous business relationships with its key management, sales, and recruiting employees including, without limitation, the Individual Defendants;

(iv)   to compete against Plaintiff in blatant disregard of the post-term covenants not to compete in the Confidentiality/Non-Competition Agreements between TECH USA and each Individual Defendant;

(v)   to misappropriate Plaintiff's Confidential Information (in violation of such Confidentiality/Non-Competition Agreements) and TECH USA's Trade Secrets (in violation of Maryland Law);

(vi)   to violate the CFAA;

(vii)   to compete unfairly with Plaintiff;

and, on information and belief, each Defendant in this action acted in furtherance of the above agreement(s) by engaging in the following acts: diverting to themselves staffing business, customers, and other corporate opportunities that were properly and legally Plaintiff's; breaching (and participating in breaching) the Individual Defendants' duties of loyalty/other fiduciary duties owed to TECH USA; interfering tortiously with TECH USA's contractual and other advantageous business relationships with its key management, sales, and recruiting employees including, without limitation, the Individual Defendants; competing against Plaintiff in blatant disregard of the post-term covenants not to compete in the Confidentiality/Non-Competition Agreements between TECH USA and each Individual Defendant; misappropriating Plaintiff's Confidential Information (in violation of such Confidentiality/Non-Competition Agreements)

and TECH USA's Trade Secrets (in violation of Maryland Law); violating the CFAA; and competing unfairly with Plaintiff.

83. On information and belief, the Defendants committed the above tortious interference with malice toward the Plaintiff.

84. Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' civil conspiracy and acts in furtherance thereof. The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all of the Defendants as follows:

(a) Entry of a Preliminary and Permanent Injunction against all of the Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from future acts in furtherance of the conspiracy.

(b) Entry of an Order requiring an accounting by against all of the Defendants to TECH USA of their sales and revenues, as a result of their aforesaid civil conspiracy, and awarding Plaintiff compensatory damages, and, in light of the Defendants' engaging in the aforesaid civil conspiracy with malice toward the Plaintiff, punitive damages from all of the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000).

(c) Entry of a judgment against the Individual Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and each Individual Defendant).

Dated: July 12, 2007

Allan P. Hillman
U.S. District Court Bar No. 119
**SHIPMAN & GOODWIN LLP**

37

One Constitution Plaza
Hartford, CT  06103-1919
(860) 251-5000
ahillman@goodwin.com


Grover C. Outland III
U.S. District Court Bar No. 24064
**TECH USA, Inc.**
8334 Veterans Highway
Millersville, MD 21108
(410) 987-1011
outland@techusa.net

## VERIFICATION OF COMPLAINT UNDER PENALTY OF PERJURY

**STATE OF MARYLAND**

**SS:**

**COUNTY OF ANNE ARUNDEL**

Thomas B. Howell, being first fully sworn, deposes and states under penalty of perjury that he is over twenty-one years of age; that he is the Chief Executive Officer of TECH USA, INC. ("TUSA"); that, as such, he is authorized to make this oath and verification; that, in his capacity, he is familiar with TUSA's business operations, including its business dealings and its relationship with its employees generally and with the Individual Defendants David Carder, Brian Pratt, and William Eric Krisher in particular; that he has read the foregoing Verified Complaint; that he knows the contents thereof to be true of his own personal knowledge, except that, as to the allegations contained in the Verified Complaint which are made on information and belief, Mr. Howell believes them to be true.

Dated: July _11_, 2007

Thomas B. Howell
Chief Executive Officer
TECH USA, INC.
8334 Veterans Highway
Millersville, MD 21108